<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GLORIA LONDONO,**<br><br>Plaintiff,<br><br>v.<br><br>**ABM JANITORIAL SERVICES,**<br><br>Defendant. | **Civil Action No. 13-3539 (ES) (JAD)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

## I.     INTRODUCTION

This is an action alleging violation of New Jersey's Conscientious Employee Protection Act ("CEPA"). Pending before the Court is Defendant ABM Janitorial Services North East Inc.'s[1] ("Defendant" or "ABM") motion to dismiss Plaintiff Gloria Londono's ("Plaintiff" or "Londono") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 28). The Court has considered the parties' submissions and resolves Defendant's motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b). Because Londono's CEPA claim is arguably preempted, Defendants' motion to dismiss is GRANTED. Plaintiff's complaint is dismissed with prejudice because further amendment would be futile.

## II.     FACTUAL & PROCEDURAL BACKGROUND[2]

ABM employed Londono from approximately 2008 through April 2012. (D.E. No. 24, Amended Complaint ("Am. Compl.") ¶ 3). At the time of Londono's employment, ABM provided

---

[1] The Amended Complaint incorrectly identifies the Defendant as "ABM Janitorial Services."
[2] Given the standard of review discussed below, the Court provides the factual and procedural background of this action in view of Plaintiff's Amended Complaint. (*See infra* Part III).

janitorial services to commercial buildings in New Jersey. (*Id.* ¶ 4). Londono was employed as a custodian at 1000 Harbor Boulevard, one of the locations where ABM provided janitorial services. (*Id.* ¶¶ 3, 4). In addition, Londono was a shop steward for the Service Employees International Union Local 32BJ for twenty years. (*Id.* ¶ 5). As shop steward, Londono was responsible for representing members of the union. (*Id.*).

On April 12, 2012, ABM implemented a new policy that Londono believed deprived her and her co-workers of overtime compensation under New Jersey Minimum State Wage and Hour Law, by effectively increasing the number of hours ABM employees were required to work in violation of New Jersey law. (*Id.* ¶¶ 7, 9).

Londono states that she made complaints regarding the new policy to ABM management in both her official union capacity and her individual capacity. (*Id.* ¶¶ 8, 11). According to the Amended Complaint, Londono never filed a formal union grievance because she "did not intend to initiate group action against ABM" in her role as shop steward, but instead sought to "leav[e] the matter to her co-workers to decide." (*Id.* ¶ 11). Londono contends that in her individual capacity she was a "vocal opponent" who "repeatedly complained" directly to ABM management that she "personally objected" to ABM's new policy. (*Id.* ¶ 12). Londono states that she made complaints to ABM management "without first discussing the matter with her co-workers." (*Id.* ¶ 14).

However, Londono eventually informed her co-workers of her belief that ABM's employment policy violated New Jersey law. (*Id.* ¶ 17). Londono asserts that she was acting in her "individual capacity as an ABM employee" when she explained to her co-workers that ABM was not paying them minimum or overtime wages, which she believed ABM was required to pay under law. (*Id.*). As a result of Londono's communication to her co-workers, some of them

refused to work whenever they believed the work schedule deprived them of minimum wages or overtime wages. (*Id.* ¶ 18). On or about April 12, 2012, ABM terminated Londono, allegedly in retaliation for her complaints regarding the new policy. (*Id.* ¶ 19).

On April 1, 2013, Londono filed a two-count complaint in the Superior Court of New Jersey, Law Division, Hudson County, alleging a violation of CEPA and breach of contract. (D.E. No. 1). On June 7, 2013, ABM timely removed the action to this Court pursuant to both federal question and diversity jurisdiction and sought to dismiss both of Londono's claims. (*Id.*; D.E. No. 5). The parties appeared before this Court on March 12, 2014 on Defendant's motion to dismiss, (D.E. No. 5), during which time Londono voluntarily withdrew the breach of contract claim, (*see* D.E. No. 27, Transcript of March 12, 2014 Oral Argument ("OA Tr.") at 33–34; D.E. No. 19). On March 13, 2014, this Court dismissed Londono's CEPA claim without prejudice. (D.E. No. 19). Londono filed an amended complaint as to the CEPA claim only on April 21, 2014. (D.E. No. 24). On May 23, 2014, Defendant filed the instant motion to dismiss the amended complaint, (D.E. No. 28), which is now ripe for the Court's consideration.

### III. LEGAL STANDARD

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## IV.   DISCUSSION

### A.   Whether Londono's CEPA Claim is Preempted by the National Labor Relations Act

The first issue before the Court is whether Londono's CEPA claim is preempted by the National Labor Relations Act ("NLRA"). ABM argues that Londono's actions were "concerted activity" subject to preemption. (D.E. No. 28-1, Memorandum of Law of Defendant ABM Janitorial Services North East, Inc. in Support of Its Motion to Dismiss the Amended Complaint ("Def. Mov. Br.") at 8–12). Londono contends that preemption does not apply because her complaints to ABM were not concerted activity. (D.E. No. 29, Memorandum of Law in Support of Plaintiff's Motion for Leave to Amend the Complaint[3] ("Pl. Opp. Br.") at 14–21). Because the

---

[3] The Court notes that the brief submitted in opposition to Defendant's motion to dismiss addresses the key legal issues raised in defendant's motion to dismiss, but is confusingly titled "Memorandum of Law in Support of Plaintiff's Motion for Leave to Amend the Complaint," repeatedly seeks leave to amend, is exceedingly similar to the brief filed in support of Plaintiff's April 21, 2014 (ultimately withdrawn) motion to amend/correct, (*compare* D.E. No. 22-10, *with* D.E. No. 29), and attaches as Exhibit 1 a "proposed" Amended Complaint—which is exactly the same as the Amended Complaint already filed and accepted by this Court on April 22, 2014. (S*ee* D.E. Nos. 24, 25). Thus, the

4

Court finds that Londono's complaints to ABM were arguably concerted activity, the Court agrees with ABM and finds Londono's claim preempted by the NLRA.

Section 7 of the NLRA protects the right of employees to "assist labor organizations" and "to engage in other concerted activities." 29 U.S.C. § 157. Section 8 of the NLRA makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" in Section 7, and "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subsection." *Id.* §§ 158(a)(1), (4).

When an "activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). "[S]tate regulations and causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the [NLRA]." *Belknap, Inc. v. Hale*, 463 U.S. 491, 498 (1983) (citation omitted).

An individual employee can engage in concerted activity. *NLRB v. City Disposal Sys. Inc.*, 465 U.S. 822, 831 (1984). According to the National Labor Relations Board ("NLRB"), "[i]n general, to find an employee's activity to be 'concerted,' we shall require that it be engaged in with or on the authority of other employees, and not solely by and on behalf of the employee himself." *Meyers Indus., Inc. v. Prill*, 268 N.L.R.B. 493, 497 (1984) ("*Myers I*"). The NLRB subsequently clarified that concerted activity "encompasses those circumstances where individual employees seek to initiate or to induce or to prepare for group action, as well as individual employees bringing

---

Court construes the brief as Plaintiff's opposition to the motion to dismiss and considers any potential motion by Plaintiff to amend as moot for purposes of deciding the instant motion to dismiss.

truly group complaints to the attention of management." *Meyers Indus., Inc. v. Prill*, 281 N.L.R.B. 882, 887 (1986) ("*Meyers II*").

ABM first and foremost argues that Londono's CEPA claim is preempted under Section 7 because her complaints to ABM about the policy were "concerted activity." (Def. Mov. Br. at 11). ABM specifically points to paragraphs 8 and 11 of the Amended Complaint where Londono admits that she complained to management, at least in part, in her official capacity as the union shop steward. (*See* Am. Compl. ¶¶ 8, 11).[4] ABM further argues that even if the Amended Complaint could be read to show that Londono was acting solely in her individual capacity, the relevant case law does not distinguish between an employee acting in his or her "official capacity" as a shop steward and in his or her "individual capacity." (Def. Mov. Br. at 11). In addition, ABM contends that Londono's complaints to management were "truly group complaints" subject to preemption because they were for the "mutual aid, protection and collective benefit" of all employees in the union. (D.E. No. 30, Reply Brief of Defendant ABM Janitorial Services North East, Inc. in Support of its Motion to Dismiss the Amended Complaint ("Def. Reply Br.") at 7). Alternatively, ABM contends that Section 8 nevertheless preempts Londono's CEPA claim because the claim "arguably implicates" Section 8, which prohibits the discharge of an employee for union activities. (Def. Mov. Br. at 11–12).

In opposition, Londono argues that her CEPA claim is not preempted because the Amended Complaint shows that she did not engage in concerted activity when she complained to ABM

---

[4] "Londono approached and complained to ABM Management that its new employment policy violated state and federal minimum wage and overtime laws. *Londono complained both in her official and individual capacity.*" (Am. Compl. ¶ 8) (emphasis added). "Although *Londono initially complained in both her union and individual capacity*, Londono never filed a formal union grievance, as she did not intend to initiate group action against ABM acting as Shop Stewart [sic], but complaint [sic] in her individual capacity as an employee, leaving the matter to her co-workers to decide whether to agree or refuse to participate in any work schedule that violated state and federal law." (*Id.* ¶ 11) (emphasis added).

6

management.  (Pl. Opp. Br. at 14–18).  Londono asserts that she was acting solely on her own behalf when she complained, and did not seek to initiate or induce group action, thus negating concerted activity.  (*Id.*).  According to Londono, the fact that she did not file a formal union grievance or discuss the issue with her co-workers before approaching management shows that she was not engaged in concerted activity, and the decision of her co-workers not to work when they felt they were being deprived of wages is not relevant to the analysis.  (*Id.* at 16, 17).

The Court finds that Count One of Londono's Amended Complaint arguably implicates protected concerted activity under section 7 of the NLRA and is thus preempted.  *Garmon*, 359 U.S. at 245; *Voilas v. Genreal Motors Corp.*, 170 F.3d 367, 378 (3d Cir. 1999).

First, Plaintiff admits in her Amended Complaint that she was acting, at least in part, in her "official capacity" as shop steward when she complained to management: "Londono complained both in her official and individual capacity"; "Londono initially complained in both her union and individual capacity . . . ." (Am Compl. ¶¶ 8, 11).  In her official capacity as shop steward, Plaintiff was "responsible for representing members of the Union Local 32B." (*Id.* ¶ 5).  Because Plaintiff admits to making the complaints in her official union capacity, and because her official capacity entailed representing members of her union, it follows that Plaintiff acted "on the authority" of the members of the union and thus engaged in concerted activity within the meaning of Section 7 when she complained to ABM management.  *See Myers I*, 268 N.L.R.B. at 497.  Furthermore, Londono acted in conformity with her role as shop steward when she informed her co-workers of her belief that ABM's employment policy violated New Jersey law, which led to some co-workers refusing to work whenever they believed the work schedule deprived them of minimum wages or overtime wages. (*Id.* ¶¶ 17, 18).  This also suggests a concerted activity by the shop steward.

Second, and more importantly, the case law does not support Londono's proposition that a designated shop steward can complain in a dual or individual capacity when raising issues to management. The Court made clear during oral argument on the first motion to dismiss that it was skeptical of such an argument, and it directed Londono to find substantive legal support for her claim. (*See* OA Tr. at 31–33). Londono has not provided—and this Court has not located—any law which states that a shop steward charged with representing her co-workers can complain to management in a dual or individual capacity in order to avoid preemption under the NLRA. Indeed, the Court finds the cases cited[5] by Londono distinguishable for the very fact that the plaintiffs there were not shop stewards.

Here, Londono unquestionably held that significant, representative role. (Am. Compl. ¶ 5). Thus, it is of no merit that Londono changed the wording in her Amended Complaint to stress that she complained in her individual capacity—the case law simply does not suggest that a shop steward can talismanically avoid preemption by stating that she acted in an individual capacity instead. *See Johnson v. United Food & Commercial Workers, Int'l Union Local No. 23*, 828 F.2d 961, 967 (3d Cir. 1987) ("[O]ne cannot avoid federal preemption of alleged state law claims by artfully phrasing the language in the complaint.").

In addition, Londono's CEPA claim relies on the allegation that she was terminated in retaliation for making the complaints to ABM management about the policy. (Am. Compl. ¶ 19). It may be true, as Londono contends, that "state-law rules that establish rights or obligations independent of a labor contract [such as retaliatory discharge] are not preempted under § 301" of

---

[5] *See, e.g.*, *NLRB v. Portland Airport Limousine Co., Inc.*, 163 F.3d 662 (1st Cir. 1998) (an individual employee will not be found to have engaged in concerted activity merely based upon a co-employee's response to the employee's action); *Roussel v. St. Joseph Hosp.*, 257 F. Supp. 2d 280 (D. Me. 2003) (no concerted activity where plaintiff did not discuss the issues with co-workers prior to making complaint to management, even though plaintiff acknowledged that her complaint to management was a group complaint designed to benefit others).

the Labor Management Relations Act. *Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 439 (D.N.J. 2011). However, this does not change the independent analysis under *Garmon*, which requires referral to the NLRB when the "activity is arguably subject to § 7 or § 8 of the [NLRA] . . . ." *Garmon*, 359 U.S. at 245. The Court finds that Plaintiff's CEPA claim is also subject to preemption because if Plaintiff's allegations are true, ABM's termination of Plaintiff is "arguably subject to" Section 8 of the NLRA, which prohibits retaliatory discharge. *See id*.

### B. Whether Londono's CEPA Claim Falls Within the Exception to Preemption

Having determined that Londono's CEPA claim is preempted under *Garmon*, the Court must next determine whether the claim falls within the exception to preemption. Because it does not find that a retaliatory discharge claim is either peripheral or a local interest, the Court determines that preemption applies.

State causes of action are "presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the [NLRA]." *Belknap, Inc. v. Hale*, 463 U.S. 491, 498 (1983) (citing *Garmon*, 359 U.S. at 245). But *Garmon* preemption does not apply to conduct that is only a "peripheral concern" of the NLRA or "touches on interests . . . deeply rooted in local feeling and responsibility . . . ." *Local 926, Int'l Union of Operating Engineers, AFL-CIO v. Jones*, 460 U.S. 669, 676 (1983). The "critical inquiry" in the "local interest" cases "is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the [NLRB]." *Sears v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 197 (1978).

ABM argues that Londono's claim is not peripheral because the NLRA clearly is intended to address the very conduct here—specifically that ABM terminated a shop steward in retaliation

9

for making complaints about a policy that was arguably in violation of the collective bargaining agreement. (Def. Rep. Br. at 12). Furthermore, ABM claims that because there is "no dispute" that Plaintiff could have filed a grievance and/or an unfair labor practice charge with the NLRB involving these same claims, the exception to preemption does not apply under *Sears*, 436 U.S. at 197. (*Id.*).

Londono argues that even if her CEPA claim is arguably subject to the NLRA, the exception applies because her whistleblower claim is "unrelated to the NLRA's purpose of protecting the bargaining process . . . ." (Pl. Opp. Br. at 24). Londono additionally argues that New Jersey's interest in "eradicat[ing] future discriminatory employment practices such as whistleblowing" is greater than the purpose of the NLRA in enforcing federal labor law. (*Id.* at 23, 24).

This Court finds that no exception to preemption applies in the instant case. Our starting point is that Londono's whistleblower & retaliatory discharge claim under CEPA is "presumptively preempted" because, as noted in Part IV.A, the claims "concern conduct that is actually or arguably either prohibited or protected by the [NLRA]." *Belknap*, 463 U.S. at 498 (citing *Garmon*, 359 U.S. at 245). The Court does not find that a claim for retaliatory discrimination is a "peripheral concern" of the NLRA, nor does it believe that a state claim for retaliatory discrimination is "so deeply rooted in local feeling and responsibility" as to prevent preemption. *See O'Donnell v. Nightlife*, No. A-5273-12T4, 2014 WL 1491415, at *7 (N.J. Super. Ct. App. Div. Apr. 17, 2014) (Appellate Division found "no error" in trial court dismissing CEPA claims as preempted under the NLRA).

First, even though the purpose of the NLRA may be to protect labor organizations and the collective bargaining process from undue interference by management, *see Fort Halifax Packing*

*Co. v. Coyne*, 482 U.S. 1, 20 (1987), there is no indication that retaliatory discharge claims are "peripheral" to this purpose. To the contrary, it appears as though preventing retaliatory discharge is very much in line with ensuring a fair collective bargaining process. *See Nightlife*, 2014 WL 1491415, at *7. This is especially true when the individual retaliated against is a shop steward who complained to management in her official capacity. (Am. Compl. ¶¶ 5, 8, 11). Indeed, a retaliatory action taken against a shop steward for raising a truly group complaint necessarily encompasses the collective bargaining process, and thus cannot be considered "peripheral." Second, this Court finds that this identical controversy could have been presented to the NLRB. As a shop steward, Londono undoubtedly could have shown that she engaged in protected concerted activity under the NLRA when she complained of an alleged violation of law affecting all employees and was then terminated in retaliation, in violation of sections 7 and 8 of the NLRA. Therefore, the CEPA claim is preempted by the NLRA. *Sears*, 436 U.S. at 197.

      **C.**     **Whether Londono Met the Requirements for Asserting a CEPA Claim**

For the reasons set forth above, the Court finds that Londono's CEPA claim is preempted by the NLRA. Accordingly, the Court declines to analyze whether Londono met the *prima facie* requirements for asserting a CEPA claim.

      **D.**     **Further Amendment of Londono's Complaint Would be Futile**

Having determined that Londono's Amended Complaint fails to state a claim upon which relief can be granted, the Court next determines whether she should be given opportunity to amend. Because the law does not stand for the proposition that as shop steward can complain to management in an individual capacity in order to avoid NLRA preemption, the Court finds that amendment would be futile.

11

"[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

For the reasons set forth in Part IV.A, the Court finds that amendment of Londono's complaint would be futile. Simply, there is no support in the law for Londono's claim that a shop steward can complain in a dual or individual capacity in order to avoid NLRA preemption.

## V.     CONCLUSION

For the reasons above, Defendants' motion to dismiss is GRANTED. Plaintiff's Amended Complaint is hereby dismissed with prejudice. An appropriate Order accompanies this Opinion.


                                                    s/Esther Salas
                                                    Esther Salas, U.S.D.J.